HAZEL MADONIA, d/b/a Whirl-A-Way Tavern, Plaintiff-Appellant, *v.* J. MICHAEL HOUSTON, Mayor and Local Liquor Control Commissioner, *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0001

Opinion filed July 12, 1984.

Costello, Long & Young, and Michael B. Metnick, both of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellee Illinois Liquor Control Commission.

James J. Parente, of Springfield, for appellees J. Michael Houston and City of Springfield.

JUSTICE GREEN delivered the opinion of the court:

On May 4, 1982, defendant, J. Michael Houston, as local liquor control commissioner of the city of Springfield, filed with the local liquor control commission of that city (LLCC) a complaint alleging that plaintiff, Hazel Madonia, d/b/a Whirl-A-Way Tavern, had committed certain violations of the city of Springfield liquor control ordinance. On June 18, 1982, following a hearing on the complaint before the LLCC, the commissioner adopted the LLCC findings of fact and conclusions of law and revoked plaintiff's liquor license effective July 12, 1982. Plaintiff appealed to the Illinois Liquor Control Commission (ILCC), which affirmed the commissioner's decision. Plaintiff then brought an action for administrative review in the circuit court of Sangamon County. On December 9, 1983, that court affirmed. Plain-

tiff has appealed to this court. We also affirm.

By the terms of section 4—4(1) of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1983, ch. 43, par. 112(1)), the local liquor control commissioner has the power to revoke for cause all local liquor licenses issued for premises located within his jurisdiction. Section 7—5 of the Act (Ill. Rev. Stat. 1983, ch. 43, par. 149) authorizes the local commissioner to revoke licenses for violations of municipal ordinances.

The complaint charged that plaintiff violated section 4.44 of the Code of the City of Springfield which states "no riotous, disorderly, indecent, or offensive conduct of any kind shall be allowed in or about [the licensed] premises." The complaint alleged that plaintiff, the licensee, had violated section 4.44 by "permitting indecent and offensive conduct on a licensed premises, to-wit: prostitution *** with the knowledge and complicity of the licensee through her employees and agents, to-wit: the manager, Samuel Ray LaForce." The complaint alleged the incidents of prostitution occurred on March 30, 1982, and April 21, 1982. In addition, the complaint alleged the licensee violated section 4.47 by selling or furnishing alcoholic liquor at retail to three female patrons without requiring payments at the time of sale on March 30, 1982. The LLCC found the allegations concerning prostitution to have been proved.

On appeal to this court, plaintiff contends that (1) the administrative decision was contrary to the manifest weight of the evidence; (2) the failure of the LLCC to grant her request for a bill of particulars was a denial of her constitutional right to a fair hearing; and (3) the consideration of hearsay evidence by the LLCC requires reversal.

The evidence of plaintiff's ordinance violations came entirely from the testimony of Joseph Davis, a detective for the city of Springfield.

Davis testified that he entered plaintiff's tavern in Springfield at about 4 p.m. on March 30, 1982, and gave 50¢ to a woman who was collecting donations from patrons for the jukebox. He stated that she then offered to perform sexual favors for him and said the price would be $45, whereupon he refused. Davis testified that he then asked the bartender, Samuel Ray LaForce, if the woman was "clean," and the bartender answered that he did not know what Davis was talking about and wanted to have nothing to do with whatever Davis had in mind. Davis also testified that he made gestures to LaForce "that [he] had—she had made an offer for some fun and had offered— had stated a price." The witness maintained that LaForce did nothing to stop the woman from making similar offers to others before he, Davis, left shortly thereafter.

Davis told of later returning to the tavern and sitting down at the

bar, after which four women came over, began talking to him and one of them, Mary Payne, made a proposal to perform a sexual act for $80. The most significant part of Davis' testimony was his statement that, while he was still at the tavern, another woman named Martie offered, in a loud voice, to perform a sexual act for a price and that during the entire conversation with this woman LaForce was on the other side of the bar only three to five feet away. Davis contended that after Martie made the comment, LaForce made a gesture with his head to her and to Davis, smiled and walked away.

Davis further testified that when no one offered to buy drinks, one of the women asked LaForce if he would give them drinks on credit and "they would pay him tomorrow." LaForce served two women drinks and wrote something down on a pad next to the cash register. Davis testified that no money was exchanged when the liquor was delivered to the women. Finally, Davis testified that he returned to the tavern on April 21, 1982, and Mary Payne again offered to perform a sexual act with him for $50.

Ray LaForce, called on behalf of plaintiff, testified that he did not recall seeing Davis or speaking with him on March 30, 1982. He stated that he did not allow prostitution or solicitation for prostitution to take place on the premises, and he was not aware that there may have been solicitation for prostitution going on on March 30, 1982. He said that if he had known that was happening he would have stopped it. He also testified that he has barred prostitutes or people he knew to be prostitutes from being in the tavern.

On administrative review, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) They should be set aside only if contrary to the manifest weight of the evidence. (*Whitley v. Board of Review* (1983), 116 Ill. App. 3d 476, 451 N.E.2d 942.) That occurs only when a conclusion opposite that of the agency is clearly evident. (*Spiros Lounge, Inc. v. Illinois Liquor Control Com.* (1981), 98 Ill. App. 3d 280, 423 N.E.2d 1366.) In contending that the commission's decision here was contrary to the manifest weight of the evidence, plaintiff relies on *Daley v. License Appeal Com.* (1964), 54 Ill. App. 2d 265, 204 N.E.2d 36, and *Evans v. License Appeal Com.* (1968), 95 Ill. App. 2d 121, 237 N.E.2d 817, where administrative decisions to revoke similar licenses of taverns were overturned on administrative review. Both cases involved charges that solicitation of prostitution had been permitted in the respective taverns.

In *Daley*, a plainclothes police officer entered the licensee's prem-

ises, was served a drink by the bartender, and was approached by a female patron. The bartender was at all times within three or four feet of the officer. The woman propositioned the officer for $10. While the woman was leaving the tavern, the officer called the bartender over and said, " '[l]isten, buddy, this girl wants to give me a lay. Is she clean?' " The bartender answered, " 'Yes, she is okay. Stop back in.' " (*Daley v. License Appeal Com.* (1964), 54 Ill. App. 2d 265, 267, 204 N.E.2d 36, 38.) The officer testified that he believed the bartender heard part of the conversation but was not sure what part of the conversation he had heard. The court concluded that the administrative agency did not have sufficient proof to find that the bartender heard any part of the conversation or understood that the woman was soliciting the officer until the solicitation had taken place and the woman and the officer were leaving.

In *Evans*, the evidence showed that two police officers in plainclothes entered the licensed tavern and were approached by a woman who offered to perform a sexual act at a particular place for a particular price. The officers purported to agree, and one of the officers stated to the bartender that he and his friend were going with the woman to "get laid" and wanted to take some whiskey with them. As the bartender sold the officer the whiskey, the officers told the bartender that the woman was charging them $10 apiece. The officer then asked the bartender to change a $20 bill so he could pay the woman, and the bartender exchanged the $20 bill for two $10 bills. The bartender denied hearing most of the conversation. The court stated that the precedent of *Daley* required it to conclude that the proof was insufficient, because it did not show that the bartender knew that solicitation had taken place until the act was complete and, thus, did not permit the act of prostitution to take place. *Evans v. License Appeal Com.* (1968), 95 Ill. App. 2d 121, 124, 237 N.E.2d 817, 819.

Plaintiff also relies on *Fitzgerald v. Illinois Liquor Control Com.* (1980), 82 Ill. App. 3d 1018, 403 N.E.2d 696. In that case, the commission had revoked a tavern's liquor license because of circumstances wherein a sale of narcotics had taken place in the tavern. The decision was also overturned on administrative review. The sale apparently took place within two or three feet of the bartender. The police officer making the purchase could not say that the bartender appeared to hear his conversation with the seller. The situation there was not analogous to the instant case.

The cases of *Daley* and *Evans* are somewhat similar to the instant case, but we consider the evidence in favor of the commissioner's rul-

ing to be stronger here. In any event, those cases were decided by a different district of the appellate court than ours and are not binding precedent on us. To the extent, if any, that our decision is at variance to those decisions, we reject their rationale.

■ One who offers to perform an act of sexual intercourse or an act of deviate sexual conduct with another for money commits an act of prostitution. (Ill. Rev. Stat. 1983, ch. 38, par. 11—14(a).) The evidence is fully sufficient to support a finding that several acts of prostitution took place in plaintiff's tavern while Davis was present. At least in regard to the offer of the woman named Martie, the agency could have determined that LaForce, because of his presence near Martie and Davis and because of his subsequent conduct, heard the offer. We disagree with the *Evans* and *Daley* courts that it would have been mere conjecture for the fact finder to have so found. In addition, here, there is evidence of the gesture purportedly made by LaForce indicating his understanding of what was taking place and his acquiescence in it. Furthermore, according to Davis, this all happened after, earlier in the day, Davis had asked LaForce about the cleanliness of one of the women in the tavern, thus indicating to LaForce that Davis was seeking a prostitute and had, perhaps, been solicited. The evidence that LaForce had given some of the women in the tavern credit to buy drinks was further circumstantial evidence that he wished for the women to come to the tavern to attract men.

If the trier of fact believed Davis' testimony, it could find that when LaForce understood that an offer had been made he gave tacit acquiescence rather than expelling both Martie and Davis, and thus permitted prostitution to take place in the tavern.

Approximately two weeks before the hearing, plaintiff filed a motion for a bill of particulars requesting specific facts indicating how the plaintiff or any of her employees knew that prostitution was taking place at the tavern. The attorney for the local commissioner responded by filing the Springfield police department's reports of the investigation of plaintiff's tavern by Davis. These reports contained no reference to the "gesture" Davis allegedly made to LaForce when asking if the first woman who approached him was "clean," nor did they mention LaForce's alleged reaction later made after Martie had allegedly made an offer to Davis in a loud voice. The plaintiff renewed her request for a bill of particulars on the date of the hearing, but no further response was made by the attorney for the commission.

■ A bill of particulars is a pleading requested, for the most part, in criminal cases. Its purpose is to supplement in detail an already sufficient charge to enable a defendant or respondent to better

prepare a defense. (*People v. Aud* (1972), 52 Ill. 2d 368, 288 N.E.2d 453.) The tribunal in which the proceeding is brought has great discretion in determining whether to grant a request for such a bill, and its denial is seldom, if ever, a denial of a constitutional right. (*People v. Curtis* (1968), 41 Ill. 2d 147, 242 N.E.2d 201.) Here, plaintiff sought detail which was mostly of an evidentiary nature. The refusal of the request fell far short of depriving plaintiff of due process or any other constitutional right.

■ The dispute over the admission of hearsay evidence arose during the hearing when Davis, over plaintiff's specific objection, was permitted to testify that (1) he told one of the women who had solicited him in the tavern that he had asked the bartender if the women in the tavern were clean, and (2) the woman responded that the bartender "is too smart for that, and so are we." The only purpose for which this testimony could have been offered was as an assertion by the witness that the bartender knew prostitutes plied their trade in the tavern but was too intelligent to admit that he had this knowledge. As such, this evidence was inadmissible hearsay. (*People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169.) Any indication to the contrary in *Starnawski v. License Appeal Com.* (1981), 101 Ill. App. 3d 1050, 428 N.E.2d 1102, is incorrect. That decision was not rendered by the appellate court for this district and is not precedentially binding upon us.

Notwithstanding the hearsay nature of this testimony, its admission is not grounds for reversal. Without mention of this testimony, we have described evidence which was sufficient to support the decision of the commissioner. Where the evidence is otherwise sufficient, we are aware of no case where an administrative decision has been held to be erroneous by a court of review of this State because of the admission of hearsay testimony. The precedent is that the admission of the improper hearsay does not require that the decision be set aside. *Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 415 N.E.2d 1249; *La Grange Bank No. 1713 v. Du Page County Board of Review* (1979), 79 Ill. App. 3d 474, 398 N.E.2d 992.

Our affirmance is for the reasons stated.

Affirmed.

MILLS, P.J., and WEBBER, J., concur.