SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### In the Matter of Neil M. Cohen, an Attorney at Law (D-50-13) (073728)

**Argued June 24, 2014 -- Decided October 23, 2014**

**FAUSTINO FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this case, the Court considers the discipline to be imposed on an attorney who pleaded guilty to second-degree endangering the welfare of a child, following an investigation into sexually explicit pornographic images of children discovered on a state-issued desktop computer used by respondent and on respondent's private law office computer.

The facts of this case are undisputed. In July 2008, printouts of pornographic images, some of which depicted young female victims, were found in a receptionist's desk drawer at the district office of New Jersey's Twentieth Legislative District. At the time, respondent was an assemblyman representing the Twentieth District. The discovery led to an investigation by the New Jersey State Police, which revealed that this was not the first time pornography was encountered at the office; staff had previously discovered sexually explicit images in the office during morning work hours or following a weekend. As a result, the Office of Legislative Services required passwords on the computers.

When confronted, respondent admitted to the State Police that he had visited pornographic sites and printed the sexually explicit pictures. He acknowledged that the sites he viewed and the printed images contained both adult and child pornography. He explained that he had accessed the receptionist's state-issued computer with a password that he instructed another member of his staff to obtain. Interviews also revealed that staff members observed respondent viewing pornography on the receptionist's computer on prior occasions. In total, the police recovered thirty-four images of child pornography that respondent accessed on computers at the district office and at respondent's law office. The images retrieved from respondent's law office depicted nineteen girls under sixteen years old.

Respondent resigned from his position in the Legislature on July 20, 2008. On July 9, 2009, the State Grand Jury returned a five-count indictment against respondent. He pleaded guilty to one count of second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(b)(5)(a), on April 12, 2010. Pursuant to his guilty plea, respondent was sentenced on November 4, 2010 to five years in State prison. He was ordered to comply with Megan's Law requirements, N.J.S.A. 2C:7-1 to -11, and he was prohibited from using the Internet. Respondent was temporarily suspended from the practice of law on January 13, 2011, following his guilty plea. In re Cohen, 204 N.J. 588 (2011). Thereafter, the Disciplinary Review Board (DRB) granted the Office of Attorney Ethics's (OAE) motion for final discipline. Finding that respondent's guilty plea was conclusive evidence of guilt for purposes of the disciplinary proceeding, Rule 1:20-13(c), the DRB, in a majority decision, voted to prospectively suspend respondent from the practice of law for two years. Two members of the panel dissented and voted for disbarment.

**HELD:** Respondent's guilty plea to second-degree endangering the welfare of a child, based on the discovery of sexually explicit pornographic images of children on a state-issued desktop computer – used by him while serving as Assemblyman – and on his private law office computer, warrants an indeterminate period of suspension, pursuant to Rule 1:20-15A(a)(2). Respondent may not seek reinstatement for five years from January 13, 2011, the date of his temporary suspension.

1. The Court's role in this matter is solely to impose an appropriate quantum of discipline on respondent for his ethical violations. Under Rule 1:20-13(c)(1), a criminal conviction is conclusive evidence of guilt in a disciplinary proceeding. Respondent's guilty plea to second-degree possession of child pornography constitutes a violation of RPC 8.4(b), which dictates that professional misconduct occurs when an attorney "commit[s] a criminal act that

reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer." The primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar, and discipline is imposed even when an attorney's offense is not related to the practice of law. In reaching a final sanction for an attorney's ethics violation, the Court takes into consideration several factors, including "the nature and severity of the crime, whether the crime is related to the practice of law and any mitigating factors, such as respondent's reputation, his prior trustworthy conduct and general good conduct." In re Lunetta, 118 N.J. 443, 445-46 (1989). (pp. 4-5)

2. Crimes involving the sexual exploitation of children have a devastating impact and create serious consequences for the victims. Child pornography, in particular, revictimizes the children involved with each viewing of the same image or video. Thus, the moral reprehensibility of this type of behavior warrants serious disciplinary penalties, up to and including disbarment, albeit mitigating circumstances might call for lesser discipline in particular cases. For cases involving possession of child pornography, the discipline imposed has ranged from a six-month suspension to disbarment. Disbarment is the most severe punishment, reserved for circumstances in which "the misconduct of [the] attorney is so immoral, venal, corrupt or criminal as to destroy totally any vestige of confidence that the individual could ever again practice in conformity with the standards of the profession." In re Templeton, 99 N.J. 365, 376 (1985). The Court disbarred an attorney who had been actively viewing child pornography for ten years, had in his possession the equivalent of 753 images of child pornography, and had traded these images with other persons. In re Burak, 208 N.J. 484 (2012). Similarly, the Court disbarred an attorney after he pleaded guilty in the United States District Court for the District of New Hampshire to felony possession of child pornography, a violation of 18 U.S.C.A. § 2252A(a)(5)(B). In re Sosnowski, 197 N.J. 23 (2008). More generally, attorneys who have been convicted of offenses involving the physical sexual assault of children have typically been disbarred by this Court. (pp. 5-12)

3. Respondent's behavior is more severe than the cases in which a six-month suspension was issued. In addition to printing sexually explicit images of children, respondent used a receptionist's computer and left images at the receptionist's desk where others found them, thereby exposing an innocent third party to the risk of criminal liability. On the other hand, respondent did not actively disseminate the photographs and was not involved in trading prohibited images with others, as the attorney in Burak, supra, and respondent did not install cameras to watch children as the attorney did in Sosnowski, supra. Moreover, respondent did not record or produce inappropriate videos of children, nor did respondent physically touch any children or use violence against them. Still, the gravity of respondent's offense against society and the child victims involved in the creation and dissemination of child pornography compels the Court to expand upon this Court's past approach to attorney discipline in these types of circumstances. Today, the Court is more acutely aware of the long-lasting pernicious effects of sexual crimes against children. While recognizing that different factors can affect the level of discipline imposed in any disciplinary case, attorneys must be on notice that engaging in this form of unlawful activity may be considered grounds for losing the privilege of membership in a distinguished and trusted profession. While the Court does not establish a per se rule of disbarment, convictions in egregious cases may result in disbarment going forward so as to align with society's sharper understanding of, and indignation over, the harm caused by the exploitation of child victims of pornographers. (pp. 12-15)

4. After analyzing and weighing the circumstances of respondent's criminal offense, as well as respondent's alleged mental illness, his own experience being sexually abused as a child, and his cooperation in seeking treatment and his progress thus far, the Court has determined to impose, for the first time, discipline not formerly used. Respondent shall serve an indeterminate period of suspension, pursuant to Rule 1:20-15A(a)(2). This form of discipline is a step short of disbarment and is the most severe suspension that can be imposed on an attorney. Imposition of the indeterminate suspension in this case places all attorneys on notice of the consequences that may follow sexually-related offenses. Respondent may not seek reinstatement for five years from the date of his temporary suspension. In addition, he must establish his fitness to practice law prior to being readmitted to the practice of law in New Jersey. Proof of fitness will be subject to vigorous review. (pp. 15-16)

So Ordered.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

IN THE MATTER OF

NEIL M. COHEN,

An Attorney at Law

> Argued June 24, 2014 – Decided October 23, 2014
>
> On an Order to show cause why respondent should not be disbarred or otherwise disciplined.
>
> Michael J. Sweeney, First Assistant Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.
>
> Daniel J. McCarthy argued the cause for respondent (Rogut McCarthy, attorneys).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this case, respondent, Neil M. Cohen, an attorney licensed to practice law in New Jersey, pleaded guilty to second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(b)(5)(a). The plea followed an investigation into sexually explicit pornographic images of children discovered on a state-issued desktop computer used by respondent and on respondent's private law office computer. He was sentenced to five years in prison for his offense.

1

We now sanction respondent to an indeterminate suspension from the practice of law, pursuant to Rule 1:20-15A(a)(2). We caution that while we do not establish a bright-line rule requiring disbarment in all cases involving sexual offenses against children, in the future, convictions in egregious cases involving child pornography may result in disbarment of attorneys who commit these offenses, in light of society's increasing recognition of the harm done to the victims of those offenses.

## I.

The facts of this case are undisputed. In July 2008, printouts of pornographic images, some of which depicted young female victims, were found in a receptionist's desk drawer at the district office of New Jersey's Twentieth Legislative District. At the time, respondent was an assemblyman representing the Twentieth District. The discovery led to an investigation by the New Jersey State Police, which revealed that this was not the first time pornography was encountered at the office; staff had previously discovered sexually explicit images in the office during morning work hours or following a weekend. As a result, the Office of Legislative Services required passwords on the computers.

When confronted, respondent admitted to the State Police that he had visited pornographic sites and printed the sexually

2

explicit pictures.  He acknowledged that the sites he viewed and the printed images contained both adult and child pornography. He explained that he had accessed the receptionist's state-issued computer with a password that he instructed another member of his staff to obtain.  Interviews also revealed that staff members observed respondent viewing pornography on the receptionist's computer on prior occasions.

In total, the police recovered thirty-four images of child pornography that respondent accessed on computers at the district office and at respondent's law office.  The images retrieved from respondent's law office depicted nineteen girls under sixteen years old.

Respondent resigned from his position in the Legislature on July 20, 2008.  On July 9, 2009, the State Grand Jury returned a five-count indictment against respondent.  He pleaded guilty to one count of second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(b)(5)(a), on April 12, 2010. Pursuant to his guilty plea, respondent was sentenced on November 4, 2010 to five years in State prison.[1]  He was ordered to comply with Megan's Law requirements, N.J.S.A. 2C:7-1 to -11, and he was prohibited from using the Internet.

---

[1] On January 4, 2012, after serving fourteen months of his five-year sentence, respondent was released from prison on parole.

3

Respondent was temporarily suspended from the practice of law on January 13, 2011, following his guilty plea. In re Cohen, 204 N.J. 588 (2011). Thereafter, the Disciplinary Review Board (DRB) granted the Office of Attorney Ethics's (OAE) motion for final discipline. Finding that respondent's guilty plea was conclusive evidence of guilt for purposes of the disciplinary proceeding, Rule 1:20-13(c), the DRB, in a majority decision, voted to prospectively suspend respondent from the practice of law for two years. Two members of the panel dissented and voted for disbarment. Respondent consents to the suspension, but seeks to have it applied retroactively to the date of his temporary suspension.

## II.

We begin by emphasizing that our role in this matter is solely to impose an appropriate quantum of discipline on respondent for his ethical violations. R. 1:20-13(c); R. 1:20-16; In re Principato, 139 N.J. 456, 460 (1995); In re Magid, 139 N.J. 449, 451-52 (1995). Under Rule 1:20-13(c)(1), a criminal conviction is conclusive evidence of guilt in a disciplinary proceeding. Respondent's guilty plea to second-degree possession of child pornography constitutes a violation of RPC 8.4(b), which dictates that professional misconduct occurs when an attorney "commit[s] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer."

4

As we engage in our analysis, we note that the primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar. In re Witherspoon, 203 N.J. 343, 358 (2010). Discipline is imposed even when an attorney's offense is not related to the practice of law. In re Kinnear, 105 N.J. 391, 395 (1987). This is because "[t]he privilege to practice law is dependent on an attorney's ability to maintain a high moral character." In re Hasbrouck, 140 N.J. 162, 166 (1995).

In reaching a final sanction for an attorney's ethics violation, we take into consideration several factors, including "the nature and severity of the crime, whether the crime is related to the practice of law and any mitigating factors, such as respondent's reputation, his prior trustworthy conduct and general good conduct." In re Lunetta, 118 N.J. 443, 445-46 (1989).

III.

Our decision in this case is driven by the gravity of the offense. Crimes involving the sexual exploitation of children have a devastating impact and create serious consequences for the victims. Child pornography, in particular, revictimizes the children involved with each viewing of the same image or video. Thus, the moral reprehensibility of this type of behavior warrants serious disciplinary penalties, up to and including

5

disbarment.  Mitigating circumstances might call for lesser discipline in particular cases.

A.

For cases involving possession of child pornography, the discipline imposed has ranged from a six-month suspension to disbarment.  For example, In re Armour, 192 N.J. 218 (2006), involved a six-month suspension for an attorney who pleaded guilty to fourth-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(b)(5)(b).[2]  In that case, the attorney, who was general counsel for Newark Housing Authority at the time, viewed many images of child pornography on a government-owned computer while at work.  He was sentenced to eighteen months' probation.

Similarly, In re Haldusiewicz, 185 N.J. 278 (2005), concerned a six-month suspension imposed on a Deputy Attorney General who also pleaded guilty to fourth-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(b)(5)(b), when he was caught having downloaded 996 images of child pornography on his office's desktop computer.  He was sentenced to three years' probation, ordered to pay fines and costs, and prohibited

---

[2] The facts of these cases are derived from DRB opinions that are archived and available on the Rutgers School of Law – Newark website.  Decisions of the New Jersey Supreme Court: Disciplinary Review Board, Rutgers School of Law – Newark, http://njlaw.rutgers.edu/collections/drb/ (last visited August 22, 2014).

6

from unsupervised contact with children under the age of sixteen. Notably, although the attorney was a government lawyer, discipline was not enhanced because his misconduct had no bearing on his work. The mitigating factors considered included the attorney's difficulty in establishing a new professional career and the forfeiture of his pension and other benefits.

We imposed a six-month suspension on an attorney who admitted to downloading internet images of children engaging in sexual acts, several hundred of which were found on his home computer. In re Kennedy, 177 N.J. 517 (2003). He pleaded guilty to fourth-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(b)(5)(b), and received three years probation. In that case, two psychologists opined that the attorney was not a risk to the community and that his collection of images was partially due to a hoarding disorder.

Likewise, an attorney was suspended from the practice of law for six months, who was found in possession of twenty-three pictures of children engaged in various sexual acts, which he had downloaded from the internet to his home computer. In re Rosanelli, 176 N.J. 275 (2003). The attorney was admitted into a pretrial intervention program after pleading guilty to fourth-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(b)(5)(b). Psychiatric and psychological reports

7

indicated that the attorney was not likely to engage in similar misconduct in the future, was not a risk to his clients, to children, or to the community, and that there was no "serious sexual psychopathology."

B.

More serious involvement with child pornography has been held in several cases to warrant harsher disciplinary actions. In In re Peck, 177 N.J. 249 (2003), for example, an attorney pleaded guilty to possession of child pornography, a violation of 18 U.S.C.A. § 2252(a)(4)(B). The attorney possessed at least three magazines, which were mailed from New York to New Jersey, with pictures of children engaged in sexually explicit activities. The attorney was sentenced to a fifteen-month prison term, followed by a three-year probationary term. We imposed a one-year suspension retroactive to the respondent's temporary suspension, ultimately determining that the nineteen months he spent in prison was an appropriate suspension and sufficient discipline.

In a different setting, a two-year suspension, retroactive to the date of the attorney's temporary suspension, was imposed on an attorney who pleaded guilty in federal court to possession of computer files and images downloaded from the internet, which depicted minors engaged in sexually explicit conduct, a violation of 18 U.S.C.A. § 2252(a)(4). In re McBroom, 158 N.J.

8

258 (1999).  There, the attorney was sentenced to a fifteen-month term of imprisonment, followed by three years' probation.  On remand from the United States Court of Appeals for the Third Circuit, the attorney was resentenced to six months' imprisonment, followed by two months of home confinement, based on substantial evidence he suffered from years of sexual abuse by his father as a child.  United States v. McBroom, 124 F.3d 533, 534 (3d Cir. 1997).  We noted that, even though the attorney did not have personal contact with the victims, he was convicted of a crime that carried a maximum five-year prison sentence and a $250,000 fine.  We also ordered that the attorney "provide proof of his psychiatric fitness to practice law" prior to his reinstatement as a licensed attorney.  In re McBroom, supra, 158 N.J. at 259.

In another matter, an attorney was suspended from the practice of law in New Jersey for three years after he was convicted of fifteen counts of felony possession of pornography and fifteen counts of unlawful dealing in child pornography.  In re Fink, 181 N.J. 350 (2004).  There, investigators found 194 pictures of prepubescent children engaged in prohibited sexual acts in the attorney's possession while executing a search warrant premised on the attorney's alleged misappropriation of client funds.  However, we conditioned the respondent's suspension in Fink on the attorney's release following his six-

9

year term of incarceration and reinstatement to the Delaware Bar, from which he consented to be disbarred.[3]

C.

In some circumstances, we have disbarred attorneys involved with child pornography, rather than imposing a lengthy suspension. Disbarment is the most severe punishment, reserved for circumstances in which "the misconduct of [the] attorney is so immoral, venal, corrupt or criminal as to destroy totally any vestige of confidence that the individual could ever again practice in conformity with the standards of the profession." In re Templeton, 99 N.J. 365, 376 (1985).

For example, we concluded that disbarment was an appropriate discipline for an attorney who had been actively viewing child pornography for ten years, had in his possession the equivalent of 753 images of child pornography, and had traded these images with other persons. In re Burak, 208 N.J. 484 (2012). We found particularly unsettling the fact that several of the images portrayed children engaged in "sadistic or masochistic conduct or other depictions of violence," such as bondage. The respondent in Burak pleaded guilty to one count of possession of child pornography, in violation of 18 U.S.C.A. § 2252A(a)(5)(B) and (b)(2), and was subsequently sentenced to

---

[3] Disbarment in Delaware is not permanent. See Del. Lawyers' Rules of Prof'l Conduct R. 22(c) (2000).

10

more than eight years in prison.  We also took into account that the attorney had been indicted for criminal sexual contact with a minor female relative during the time that the FBI was investigating his child pornography activities.

Similarly, we disbarred an attorney after he pleaded guilty in the United States District Court for the District of New Hampshire to felony possession of child pornography, a violation of 18 U.S.C.A. § 2252A(a)(5)(B).  In re Sosnowski, 197 N.J. 23 (2008).  The attorney admitted to possessing sixty-seven images of child pornography and eight sexually explicit video files of children engaging in sexual acts and exposing their genitals. In addition, the attorney had placed hidden cameras in a child's bathroom and bedroom.  He was sentenced to thirty-seven months in prison, with five years of supervised release, and was ordered to pay a $100 assessment.

More generally, attorneys who have been convicted of offenses involving the physical sexual assault of children have typically been disbarred by this Court.  In re Wright, 152 N.J. 35, 35 (1997) (disbarring attorney convicted of aggravated criminal sexual assault for digitally penetrating his minor daughter's vaginal area); In re "X", 120 N.J. 459, 464-65 (1990) (disbarring lawyer who sexually assaulted his three daughters over an eight-year period); cf. In re Herman, 108 N.J. 66, 67 (1987) (suspending attorney for three years for purposely

touching the buttocks of a ten-year-old boy, a second-degree sexual assault).

Most recently, we disbarred an attorney who pleaded guilty to third-degree endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4(a). In re Frye, 217 N.J. 438 (2014). There, the respondent admitted to improperly touching a nine-year-old child in 1999, with the intent to "impair or debauch the morals of the child." Respondent was sentenced to five years' non-custodial probation, community supervision for life, and was prohibited from having contact with the victim. In September 2003, the respondent was found guilty of violating his probation by failing to report to his probation officer on six dates and failing to attend sex therapy. On September 19, 2003, he was sentenced to continued probation. We based his disbarment sanction on the crimes themselves and respondent's failure to notify the OAE of his conviction for more than fifteen years, during which he continued to practice law with impunity.

IV.

Were we limited to past approaches to fixing the proper quantum of punishment for child-pornography-related cases involving licensed attorneys, we would judge the behavior of the respondent in this case to be more severe than the cases in which a six-month suspension was issued. Respondent's guilty

12

plea for endangering the welfare of a child was a crime of the second-degree resulting in a five-year prison sentence. The crime was certainly more serious than the offenses committed in Armour, Haldusiewicz, Kennedy, and Rosanelli. In those matters, the respondents pleaded guilty to a fourth-degree charge and were either admitted into a pretrial intervention program or sentenced only to a term of probation. Moreover, like the respondents in Armour and Haldusiewicz, respondent in this matter used a state-issued computer to download the images while at work. Respondent, however, took matters one step further by using a receptionist's computer, thereby exposing an innocent third party to the risk of criminal liability.

On the other hand, although respondent printed sexually explicit images of children and left them in a receptionist's desk where others found them, he did not actively disseminate the photographs and was not involved in trading prohibited images with others, as the attorney in Burak. Moreover, respondent did not install cameras to watch children as the attorney did in Sosnowski, and he did not record or produce inappropriate videos of children. Nor did respondent physically touch any children or use violence against them. Based on the facts adduced in past disciplinary matters, the setting of this case is closest to the circumstances of McBroom and Peak because

13

respondent was found in possession of child pornography and was sentenced to serve time in prison.

Still, the gravity of respondent's offense against society and the child victims involved in the creation and dissemination of child pornography compels us to expand upon this Court's past approach to attorney discipline in these types of circumstances. Today, we are more acutely aware of the long-lasting pernicious effects of sexual crimes against children. In light of the seriousness of these crimes, the Legislature acknowledged this increased awareness when it amended N.J.S.A. 2C:24-4 in 2013. L. 2013, c. 136. The amendment increased the severity of crimes involving possession and dissemination of child pornography, and increased the age of children -- from sixteen to eighteen years old -- for which individuals can be prosecuted under the child endangerment statutes. Assemb. Law and Public Safety Comm., Statement to S. No. 2493 and Assemb. Nos. 3735 and 3740, 215th Leg. at 1 (May 6, 2013).

Until now attorneys have not had clear notice of the more stringent approach we will take in disciplining attorneys for egregious offenses. Today, attorneys must be on notice that engaging in this form of unlawful activity may be considered grounds for losing the privilege of membership in a distinguished and trusted profession. While we do not establish a per se rule of disbarment, convictions in egregious cases may

14

result in disbarment going forward so as to align with society's sharper understanding of, and indignation over, the harm caused by the exploitation of child victims of pornographers.

We recognize that different factors can affect the level of discipline imposed in any disciplinary case, including child pornography cases. Such factors include whether the case involved touching, physical violence, or actual dissemination to others, the number of pictures or videos, or whether the perpetrator suffered from mental illness or sexual abuse himself or herself.

In the case at hand, after analyzing and weighing the circumstances of respondent's criminal offense, as well as respondent's alleged mental illness, his own experience being sexually abused as a child, and his cooperation in seeking treatment and his progress thus far, we have determined to impose, for the first time, discipline not formerly used. We hold that respondent shall serve an indeterminate period of suspension, pursuant to Rule 1:20-15A(a)(2). This form of discipline is a step short of disbarment and is the most severe suspension that can be imposed on an attorney.

Imposition of the indeterminate suspension in this case places all attorneys on notice of the consequences that may follow sexually-related offenses. Respondent may not seek reinstatement for five years from the date of his temporary

15

suspension.  In addition, he must establish his fitness to practice law prior to being readmitted to the practice of law in New Jersey.  Proof of fitness will be subject to vigorous review.

     CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

16

SUPREME COURT OF NEW JERSEY

NO.    D-50                          SEPTEMBER TERM 2013

APPLICATION FOR    _____

DISPOSITION _____ Order to Show Cause Why Respondent Should _____

_____ Not be Disbarred or Otherwise Disciplined _____


IN THE MATTER OF

NEIL M. COHEN,

An Attorney at Law


DECIDED            October 23, 2014
                   _____
OPINION BY         Justice Fernandez-Vina
                   _____
CONCURRING OPINION BY    _____
DISSENTING OPINION BY    _____

| CHECKLIST | INDETERMINATE SUSPENSION | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

IN THE MATTER OF

NEIL M. COHEN,

AN ATTORNEY AT LAW

(Attorney No. 008331978)

:
:
:
:
:
:

**FILED**

OCT 2 3 2014

ORDER

CLERK

It is ORDERED that pursuant to Rule 1:20-15A(a)(3), **NEIL M. COHEN**, formerly of **MONTCLAIR**, who was admitted to the bar of this State in 1978, and who has been temporarily suspended from the practice of law since January 13, 2011, is suspended indefinitely from the practice of law in this State, retroactive to January 13, 2011; and it is further

ORDERED that **NEIL M. COHEN** shall not petition for reinstatement for a period of five years from the date of the effective date of his suspension; and it is further

ORDERED that prior to the reinstatement to the practice of law, respondent shall submit to the Office of Attorney Ethics proof of his fitness to practice law as attested to by a mental health professional approved by the Office of Attorney Ethics; and it is further

ORDERED that respondent continue to comply with Rule 1:20-20 dealing with suspended attorneys; and it is further

ORDERED that pursuant to Rule 1:20-20(c), respondent's failure to comply with the Affidavit of Compliance requirement of Rule 1:20-20(b)(15) may (1) preclude the Disciplinary Review

Board from considering respondent's petition for reinstatement for a period of up to six months from the date respondent files proof of compliance; (2) be found to constitute a violation of RPC 8.1(b) and RPC 8.4(c); and (3) provide a basis for an action for contempt pursuant to Rule 1:10-2; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in Rule 1:20-17.


WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 23rd day of October, 2014.

CLERK OF THE SUPREME COURT

The foregoing is a true copy
of the original on file in my office.

CLERK OF THE SUPREME COURT
OF NEW JERSEY